## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Criminal Case No. 18-cr-00389-RBJ**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

v.

**1. CARMEN SANCHEZ,**

**Defendant.**

---

# PLEA AGREEMENT

---

The United States of America, by and through Daniel E. Burrows, Special Assistant U.S. Attorney for the District of Colorado, and Defendant Carmen Sanchez, personally and by counsel, Natalie G. Stricklin, submit the following plea agreement pursuant to D.C.COLO.LCrR 11.1.

## I.   AGREEMENT

1.   *Defendant Carmen Sanchez's Obligations*

Defendant Carmen Sanchez agrees to plead guilty to Counts 1 and 8 of the Indictment, which respectively charge violations of 18 U.S.C. § 1341 (2012), mail fraud, and 18 U.S.C. § 371 (2012), conspiracy.

Defendant Carmen Sanchez also agrees to pay $35,174.65 in restitution, due in the following amounts, which represent the total outstanding loss to each of the victims:

- $32,051 to the U.S. Department of Education,
- $2073.65 to the Community College of Denver (CCD), and
- $1050 to the State of Colorado.



COURT
EXHIBIT
1

Such restitution shall be solely the responsibility of Defendant Carmen Sanchez, and such responsibility shall exist independent of any restitution order which may exist (now or in the future) with regard to any of her co-defendants in this case.[1]

Defendant Carmen Sanchez also agrees to admit the forfeiture allegation in the Indictment and forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture under 18 U.S.C. § 981(a)(1)(c) (2012) and 28 U.S.C. § 2461 (2012). Specifically, she agrees to a money judgment in the amount of $24,978.95. She also agrees that this forfeiture is not excessive and that the conduct described below provides a sufficient factual and statutory basis for the forfeiture of the assets and property just described.

Finally, Defendant Carmen Sanchez agrees to waive her appellate rights, as detailed below.

2.    *The Government's Obligations*

The United States agrees, under Fed. R. Crim. P. 11(c)(1)(A), to move, at sentencing, to dismiss Counts 2 and 4 with prejudice.

The United States also agrees, under Fed. R. Crim. P. 11(c)(1)(B), that its sentencing request will not include more than nine months of imprisonment on each count, to be served concurrently.

The United States also agrees, under Rule 11(c)(1)(B), that Defendant Carmen Sanchez has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty.

---

[1] The purpose of this provision is for Defendant Carmen Sanchez to avoid joint and several liability for the entire scheme charged in the Indictment. The parties have, as part of this plea agreement, attempted to parcel out Defendant Carmen Sanchez's individual responsibility.

Therefore, so long as she remains eligible for the two-level guideline decrease under U.S. Sentencing Guidelines Manual § 3E1.1(a) (U.S. Sentencing Comm'n 2018), the government will move for an additional one-level decrease under *id.* § 3E1.1(b).

Finally, the United States agrees, under Rule 11(c)(1)(B), that it will not seek an enhancement under U.S. Sentencing Guidelines Manual § 3C1.1 (U.S. Sentencing Comm'n 2018).

3.    *Defendant Carmen Sanchez's Waiver of Appeal*

Defendant Carmen Sanchez is aware that 18 U.S.C. § 3742 (2012) affords her the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, Defendant Carmen Sanchez knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction, (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 14, or (3) the government appeals the sentence imposed. If any of these three criteria apply, Defendant Carmen Sanchez may appeal on any ground that is properly available in an appeal that follows a guilty plea.

Defendant Carmen Sanchez also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255 (2012)). This waiver provision does not prevent Defendant Carmen Sanchez from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) she should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute, (2) she was deprived of the effective assistance of counsel, or (3) she was prejudiced by prosecutorial misconduct.

## II.   ELEMENTS OF THE OFFENSES

The parties agree that the elements of the offenses to which this plea is being tendered are as follows:

### Mail Fraud (Count 1)

(1)   Defendant Carmen Sanchez devised or intended to devise a scheme to defraud, as alleged in the indictment;

(2)   she acted with the specific intent to defraud;

(3)   she caused another person to mail something through the Postal Service or a commercial interstate carrier for the purpose of carrying out the scheme; and

(4)   the scheme employed false or fraudulent pretenses, representations, or promises that were material.

10th Cir. Crim. Pattern Jury Instr. 2.56.

### Conspiracy (Count 8)

(1)   Defendant Carmen Sanchez agreed with at least one other person to violate the law;

(2)   one of the conspirators engaged in at least one overt act furthering the conspiracy's objective;

(3)   Defendant Carmen Sanchez knew the essential objective of the conspiracy;

(4)   Defendant Carmen Sanchez knowingly and voluntarily participated; and

(5)   there was interdependence among the members of the conspiracy (that is, each alleged co-conspirator's activities constituted essential and integral steps toward the realization of a common, illicit goal).

See 10th Cir. Crim. Pattern Jury Instr. 2.19; see also United States v. Hanzlicek, 187 F.3d 1228, 1232 (10th Cir. 1999) (defining "interdependence" as stated here, which is different from the pattern instruction).

## III.   STATUTORY PENALTIES

The maximum statutory penalty for a violation of § 1341 (mail fraud) is: not more than twenty years' imprisonment; not more than a $250,000 fine, or both; not more than three years of supervised release; a $100 special assessment fee; and full, mandatory restitution.

The maximum statutory penalty for a violation of § 371 (conspiracy) is: not more than five years' imprisonment; not more than a $250,000 fine, or both; not more than three years of supervised release; a $100 special assessment fee; and full, mandatory restitution.[2]

The Court will impose a separate sentence on each count of conviction and may, to the extent permitted by law, impose such sentences either concurrently with or consecutively to each other.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.   STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that Defendant Carmen Sanchez will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and

---

[2] The parties have stipulated that the restitution owed in this case is $35,174.65, as apportioned in Part I.

consider the other factors set forth in 18 U.S.C. § 3553 (2012), additional facts may be included below that are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts that do not contradict facts to which the parties have stipulated and that are relevant to the Court's guideline computations, to other § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is in December 2012.

The parties agree as follows:

Defendant Carmen Sanchez devised a scheme whereby she could receive student aid money without any substantial attempt to actually attend school. The basic outline of the scheme was this: she would enroll for online classes at an institution with open enrollment (i.e., a school without an extensive application process, where anyone who wanted to attend classes generally could do so). She would also apply for financial aid, ostensibly to support attendance in those courses (plus related living expenses). However, once she received the money she would spend it on whatever she wanted, unconnected to college. If a school required some minimal demonstration that a person was a legitimate student, she would log on to the online course however much was necessary to receive the aid money, but she would not make any good faith effort to pursue an education.

Defendant Carmen Sanchez first executed this scheme beginning in late 2012 when she signed up for online courses at the CCD for the upcoming spring term. She

also applied for attendant financial aid. To maximize her aid award, she falsely stated that she had no income (in fact, she'd had a job at a title company since 2005[3]). The CCD then asked her to provide recent tax returns to verify these statements. In response, a false document was provided reporting she had been incarcerated all of 2011 (and, therefore, did not file taxes).

Defendant Carmen Sanchez was eventually approved for and received aid. However, she only logged into her classes twice—the last time being February 1, 2013—and she spent the aid money on things wholly unrelated to the pursuit of any formal education.

She continued to execute her scheme in the academic terms that followed, operating along the same basic outline. Following the summer 2013 term, the CCD determined that Defendant Carmen Sanchez was not making satisfactory academic progress. The school therefore told her that it intended to terminate her enrollment. She appealed this decision, blaming her lack of academic progress on a recent death in the family.[4] The CCD granted Defendant Carmen Sanchez's appeal and allowed her to enroll for the next term.

Seeing that her scheme had been successful, Defendant Carmen Sanchez expanded her fraud for the fall 2013 term by enrolling her mother. At the time, her mother, E.S., was in her late eighties and lived in Defendant Carmen Sanchez's home

---

[3] Defendant Carmen Sanchez worked at the title company full time from January 2005 to May 2011, worked on and off as a temp until July 2014, and then came on full time again.

[4] Defendant Carmen Sanchez's brother had indeed died in May 2013, but it did not affect her academic progress because she had intended from the start to defraud the schools and the Department of Education.

because E.S. was physically and financially unable to live on her own.[5] Defendant Carmen Sanchez had access to E.S.' personal information because E.S. lived in the same household with her and used that information to sign E.S. up for classes and receive financial aid. E.S. later reported to law enforcement that all this was done without her knowledge. Defendant Carmen Sanchez then took the money that was awarded in her mother's name and used it herself without telling E.S. about it.

When Defendant Carmen Sanchez once again failed to make academic progress in the fall of 2013, the CCD terminated her for good. Undeterred, Defendant switched her own enrollment to Front Range Community College, executing her scheme there for the spring 2014 term[6] while keeping up her mother's fraudulent enrollment at the CCD.

At all times relevant to this case, the process for disbursing federal financial aid for higher education was as follows: the Department of Education would disburse funds directly to the college where a particular student who was awarded aid was enrolled. Once the money was received, the college would apply the funds to tuition, fees, and any other outstanding charges on the student's account. Any money remaining was

---

[5] While Defendant Carmen Sanchez agrees with and stipulates to this sentence, she nonetheless notes that her mother was not completely incapacitated: E.S. still retained sufficient functional capacity to read and write (which she can no longer do now because of macular degeneration) and to babysit one of her grandchildren. Defendant Carmen Sanchez also notes that her mother retained a driver's license during this time. The government lacks sufficient information to confirm or deny this description of E.S.' condition and therefore takes no present position, reserving the right to contest these claims at sentencing. At any rate, the parties agree that the mother's age, condition, and at least partial reliance on Defendant Carmen Sanchez was sufficient to trigger the vulnerable victim enhancement in U.S. Sentencing Guidelines Manual § 3A1.1(b)(1) (U.S. Sentencing Comm'n 2018).

[6] Approximately $7000 was disbursed to FRCC in Defendant's name. However, no "refund" to Defendant ultimately occurred.

then "refunded" to the student. Colorado community colleges used a company called Bank Mobile to distribute aid "refunds." Specifically, the money was placed in an account with Bank Mobile in the student's name. Bank Mobile would then mail a debit card to the student. Through this card, the student could access the "refunded" money.

The above-described fraud scheme resulted in Bank Mobile mailing at least three debit cards to Defendant Carmen Sanchez's address in Colorado. This includes the mailing mentioned in Count 1 of the Indictment, which was a debit card in E.S.' name that Defendant Carmen Sanchez kept and used for her own purposes.

Altogether, Defendant Carmen Sanchez fraudulently obtained $30,397 in financial aid awards in her own name and another $16,447 in her mother's name.[7] Of these amounts, $24,978.95 ended up in Defendant Carmen Sanchez's pocket in the form of aid "refunds." She spent the money (at least in part) on various extravagances, including gambling in Central City/Blackhawk, Colorado, and a vacation to California and Nevada.

Defendant also spent some of the money on cosmetic surgery. Her son, Defendant Andrew Sanchez, was likewise fraudulently receiving student aid funds. In February 2014, she convinced him to help her pay for a face lift she had desired for some time. That same month, they misapplied $6450 in student aid money for this purpose. Defendant Carmen Sanchez knowingly and voluntarily contributed $2000 of her own aid money and $2450 that had been awarded in her mother's name. Defendant Andrew Sanchez contributed the remaining $2000.

---

[7] The difference between these amounts (which the parties agree together represent the intended loss for guideline calculation purposes) and the stipulated restitution amount is the result of the "return to Title IV" process whereby, based on a complicated formula, the school returns a portion of disbursed aid to the Department of Education for students who drop out, withdraw, or fail to attend a sufficient number of class sessions.

### VI.   ADVISORY GUIDELINE COMPUTATION AND § 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the U.S. Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the U.S. Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters that are in dispute.

A.   The base guideline is U.S. Sentencing Guidelines Manual § 2B1.1 (U.S. Sentencing Comm'n 2018), with a base offense level of 7.

B.   The following specific offense characteristics apply:

- The intended loss (more than $40,000 but less than $95,000) adds six levels, *id.* § 2B1.1(b)(1); and

- two more levels for using means of identification (her mother personal information) to unlawfully obtain other means of identification (debit cards, student online logins, etc.), *id.* § 2B1.1(b)(11)(C)(i).

C.   The two-level vulnerable victim enhancement from *id.* § 3A1.1(b)(1) applies. There are no role-in-offense, obstruction or multiple-count adjustments.

D.   The adjusted offense level therefore would be 17.

E.   The parties agree that a two-level decrease for acceptance of responsibility would be appropriate under *id.* § 3E1.1(a) so long as Defendant does nothing inconsistent with accepting responsibility between pleading guilty and sentencing. The United States has also agreed, as part of this plea agreement, to request an additional one-level decrease under *id.* § 3E1.1(b). The resulting offense level

therefore would be 14.

F.   The parties understand that Defendant's criminal history computation is tentative. The criminal history category will be determined by the Court based on Defendant's prior convictions. Based on information currently available to the parties, it is estimated that Defendant's criminal history category would be Category I.

G.   The career offender, criminal livelihood, and armed career criminal adjustments would not apply.

H.   The advisory guideline range resulting from these calculations is fifteen to twenty-one months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from fifteen months (bottom of Category I) to forty-six months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

I.   Pursuant to *id.* § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $4000 to $40,000,[8] plus applicable interest and penalties.

J.   Pursuant to *id.* § 5D1.2, if the Court imposes a term of supervised release, that term is at least one year, but not more than three years.

•   *Id.* § 5E1.1 requires a restitution order for the full amount of the victim's losses, consistent with 18 U.S.C. § 3663A (2012). The parties have stipulated those

---

[8] The fine table from the 2014 edition of the guidelines is used for offenses, like the one here, "committed prior to November 1, 2015." U.S. Sentencing Guidelines Manual § 5E1.2(h)(1).

numbers are $32,051 to the Department of Education, $2073.65 to the CCD, and $1050 to the State of Colorado.

The parties understand that although the Court will consider their estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other § 3553 factors, so long as such request is consistent with the parties' obligations in Part I.

The parties understand that the Court is free, upon consideration and proper application of all § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form) within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any § 3553 factor.

## VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances,

express or implied. In entering this agreement, neither the government nor Defendant
Carmen Sanchez has relied or is relying on any terms, promises, conditions, or
assurances not expressly stated in this agreement.


Date: _____2/13/19_____

_____
Carmen Sanchez
Defendant


Date: _____2/13/19_____

_____
Natalie G. Stricklin
Attorney for Defendant


Date: _____2/13/19_____

_____
Daniel E. Burrows
Special Assistant U.S. Attorney