IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 18-CR-00389-RBJ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CARMEN SANCHEZ,

        Defendant.

---

**SENTENCING STATEMENT IN SUPPORT
OF A SENTENCE OF PROBATION**

---

        Ms. Carmen Sanchez, through undersigned counsel, Natalie Stricklin, submits this sentencing statement. Ms. Sanchez respectfully requests the Court impose a sentence of probation. Such a sentence is "sufficient, but not greater than necessary" to achieve the purposes of sentencing as set forth in 18 U.S.C. §3553(a)(2).

**I.**     **18 U.S.C. §3553(a)(1)**

    A)     <u>Nature of the Offense</u>

        Ms. Sanchez has pled guilty to Mail Fraud and Conspiracy for receiving student aid money and using it for expenses unrelated to education. In 2012 and 2013, Ms. Sanchez enrolled and signed up for online classes at Community College of Denver. She also applied for financial aid. She was approved and received aid money. The money was spent on things unrelated to school. In 2013, Ms. Sanchez enrolled her mother, Ester Sanchez, in classes at CCD. Ester Sanchez also received financial aid money that Carmen Sanchez used on expenses unrelated to education. In 2014, Ms. Sanchez's son and codefendant, Andrew Sanchez, gave her some of his own

fraudulently received student aid money. Ms. Sanchez used that money to pay for surgery to remove a facial scar (deformity) from her cheek. In total, Ms. Sanchez received $24,978.95.

During the same 2012-2014 timeframe, several of Ms. Sanchez's family members were also fraudulently receiving student aid money. Each family member operated independently. It is unclear to law enforcement who started the scheme. However, it is suspected that Jeramyah Gonzalez, who is married to Carmen Sanchez's niece, Sara Sanchez, came up with the idea. Notably, Mr. Gonzalez and Mr. Anthony Sanchez not only fraudulently enrolled themselves and their family members in classes, but also enrolled former co-workers by using personal identifying information they stole from their former employer. As to the amounts fraudulently received by each of the co-defendants, Ms. Sanchez received far less than Anthony Sanchez and presumably far less than Jeramyah Gonzalez. Ms. Sanchez received a similar amount to co-defendant Sara Sanchez.

    B)    <u>History and Characteristics of Ms. Sanchez</u>

        i)    <u>Family and Care of Ester Sanchez</u>

Ms. Sanchez was born in California, however she moved to Colorado when she was a child and has always considered Colorado home. At age 8, Ms. Sanchez, her younger sister, Stephanie Cordova, and their mother, Ester Sanchez, moved from California to Colorado. Ms. Sanchez's 7 other siblings, who were all much older than her, remained in California, deciding not to make to the move. Ms. Sanchez is close with her siblings, with the exception of one sister. Five of her six brothers are deceased. Ms. Sanchez and Stephanie were raised by their single mother and

maternal grandmother.  Ms. Sanchez is and always has been close with Stephanie.  Currently, the two live together and Stephanie remains very supportive of Ms. Sanchez.

Ms. Sanchez is also very close with her niece, Sara Sanchez.  Ms. Sanchez and sister Stephanie both raised Sara, who was born when Stephanie was just 16.  Ms. Sanchez has always considered Sara another daughter.  Ms. Sanchez has two children of her own, Andrew Sanchez and Chrystin Sanchez.  Ms. Sanchez is close with her children.  Chrystin has been very supportive of her mother throughout the pendency of this case.  Chrystin has attended Ms. Sanchez's court dates.

Although Ms. Sanchez is close with nearly all of her family members, she has a especially close relationship with her mother Ester.  Ester Sanchez is now 93 years old and her health has significantly deteriorated over the last several years.  Ester Sanchez is diagnosed with congestive heart failure, macular degeneration, and hearing loss. As her mother's health worsened, Ms. Sanchez took on the responsibility of caring for Ester.  Today, Ester is unable to care for herself and Ms. Sanchez is her full-time care provider.  Ms. Sanchez pays all of her mother's medical bills, schedules doctor appointments, attends all of those appointments, and has recently stayed with her mother in the hospital while Ester was undergoing treatment related to her heart condition. Ms. Sanchez holds both a power of attorney and medical durability for her mother.   Day to day, Ms. Sanchez prepares all of her mother's meals, bathes her, and helps her with all of her daily activities.  If Ms. Sanchez were no longer able to be her mother's caregiver, it is unclear who would care for Ester.  Currently, the family has no back up plan because Ms. Sanchez is the only family member with the resources, ability, and time to devote to Ester's care.

      ii)      <u>Employment</u>

As her mother's full-time care provider, Ms. Sanchez earns a small income, approximately $400 a month, through Oasis Personal Care Provider. In order to earn that income, Ms. Sanchez had to go through several training and certification programs.

Prior to taking on the responsibility of providing care for Ester Sanchez, Ms. Sanchez worked at Chicago Title as an escrow officer and closer for over 20 years.

      iii)      <u>Substance Abuse and Mental Health</u>

Beyond a normal range of anxiety related to stress, Ms. Sanchez has no mental health history of concern. Nor does she have any history of substance abuse.

      iv)      <u>Criminal History and Conduct while on Bond</u>

Ms. Sanchez has no criminal history. In this case, she was released on bond on August 29, 2018. She has complied with all conditions of her bond. The probation department has acknowledged her lack of criminal history and behavior on bond as factors warranting a variance.

## II. A SENTENCE OF PROBATION WOULD BEST SATISFY THE GOALS OF §3553(a)

The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)," which are "the need for the sentence imposed -

    B)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    C)    to afford deterrence to criminal conduct;
    D)    to protect the public from future crimes of the defendant; and
    E)    to provide the defendant with needed educational, or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2).

Ms. Sanchez is a 54-year-old woman convicted of fraudulently receiving student aid.  This conduct represents aberrant behavior for Ms. Sanchez who has no criminal history.  Although an uncommon sentence in federal court, a sentence of probation best serves the federal sentencing goals.

Although often overlooked, a felony conviction and probation sentence provides punishment.  Ms. Sanchez will forever bear the stigma and natural consequences of being a convicted felon.  She must forever inform potential employers she is a convicted felon.  She will likely never work in the title industry again.  Fortunately, she will still be able to earn a small income caregiving for her mother.  Other rights are also affected by this conviction.  Probation will impose strict limitations on many freedoms, including travel restrictions, required meetings with probation, and required financial monitoring.  It does not appear Ms. Sanchez is in need of specific treatment for mental health or substance abuse.

A non-custodial sentence from this Court does not undermine the need to punish Ms. Sanchez.   Probation is punishment.  Congress viewed probation as a distinct type of criminal punishment with independent value in the overall sentencing scheme, not a gift of "leniency" to be given only in extraordinary cases. Through the Sentencing Reform Act ("SRA"), Congress directed the Sentencing Commission to implement that view by designing guidelines that would insure that probationary sentences would be the "general(ly) appropriate" sentence in certain defined categories of cases. 28 U.S.C. § 994(j).  Those categories are present here as Ms. Sanchez is a first time offender not convicted of a crime of violence or otherwise serious offense.  Therefore, a probationary sentence is presumptively appropriate.

Additionally, the Court could add a condition of home detention to further punish Ms. Sanchez.  Home detention would restrict Ms. Sanchez's abilities to participate in leisure activities.  Home detention can be used to forbid Ms. Sanchez from doing the things she enjoys, for example, traveling to Black Hawk with her family to celebrate special occasions.  The Court could also add a condition requiring Ms. Sanchez to perform community service hours so that she is spending her spare time giving back to the community.

Issues regarding safety to the public and deterrence of future criminal conduct are far less critical in this case than many others.  First, persons similarly situated to Ms. Sanchez are empirically far less likely to recidivate than other defendants.  Both her age and first offender status (a criminal history I with no priors) statistically mitigate against further offense.  Virtually every study that counsel has reviewed and Commission statistics themselves confirm that persons like Ms. Sanchez are very unlikely to reoffend.  The Sentencing Commission recognized that (1) recidivism rates decline dramatically with age, and (2) first-time offenders are even less likely to reoffend than defendants with a limited criminal history who also fall within Criminal History Category I. *See* U.S. Sentencing Commission, <u>Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines</u>, at Ex. 9 (May 2004); U.S. Sentencing Commission, <u>Recidivism and the "First Offender,"</u> at 13- 14 (May 2004).

Neither specific nor general deterrence require a jail sentence.  Regarding general deterrence, all available evidence supports the view that it is simply not a factor in the real world.  Typical of the findings on general deterrence are those of the Institute

of Criminology at Cambridge University. *See* Andrew von Hirsch, et al, <u>Criminal Deterrence and Sentence Severity: An Analysis of Recent Research</u> (1999), summary available at <u>http://members.lycos.co.uk/lawnet/SENTENCE.PDF</u>. The report examined penalties in the United States and several European countries. *Id.* at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id.* While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *Id.* at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1. Another study concluded: "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through deterrence mechanisms." *See* David Weisburd et al., <u>Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes</u>, 33 Criminology 587 (1995); *see also* Zvi D. Gabbay, <u>Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime</u>, 8 Cardozo J. Conflict Resol. 421, 18 448-49 (2007) ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders.").

      As for specific deterrence, a probation sentence affords Ms. Sanchez adequate deterrence.  Ms. Sanchez is already severely shamed because of her experiences in court on this case.  Ms. Sanchez has been on bond during the pendency of her case absent any misconduct or violations.  No jail is needed to deter her.  Further, Ms.

7

Sanchez has every incentive to comply with probation, especially considering if Ms. Sanchez loses her freedom, there is no one to care for her mother.

## III.     THE GUIDELINE RANGE

The advisory guideline range calculated by the probation department in the PSIR is 15-21 months.  That range results from a total offense level 14 and criminal history category of 1.  Ms. Sanchez's guideline calculation is in part driven by the intended loss calculation, in this case $41,425.95.  Because the intended loss amount is greater than $40,000 and less $95,000, six levels are added to the offense level calculation.  If the amount had been less than $40,000, only 4 levels would have been added.  Therefore, because of approximately $1400 Ms. Sanchez's guideline range falls in Zone D.  Additionally, if the intended loss amount had been more than double, the guideline range would have remained the same.  If actual loss were used in the guideline calculation, Ms. Sanchez's guideline range would have been two levels and one zone lower.

## IV.     PRESENT EFFORTS TO PAY RESTITUTION

The need to impose restitution is a further sentencing factor to be considered by this Court.  18 U.S.C. § 3553(a)(7).   As part of her plea, Ms. Sanchez agreed to pay just over $35,000 in restitution.  Ms. Sanchez is committed to pay that restitution promptly.

In December of 2018, Ms. Sanchez closed on the sale of her home on Oswego Street in Henderson, Colorado.  The proceeds were approximately $90,000.  That money was used to pay off all of Ms. Sanchez's outstanding debts, including her car loan, Sara Sanchez's car loan, credit card debt, Chrystin Sanchez's credit card debts,

final utility bills, and reimbursement to Chrystin Sanchez for bills paid while Ms. Sanchez was laid off from the title company.

Ms. Sanchez is currently living at her sister Stephanie's house. Her only income is from Oasis for the care of her mother. Nonetheless, Ms. Sanchez will have a check with her at sentencing for $10,000 to pay towards her restitution obligation.

## V.     CONCLUSION

Although an outlier sentence and one that is rare in federal court, a sentence of probation with home detention is "sufficient, but not greater than necessary" to achieve the goals as set forth in 18 U.S.C. §3553(a).

Respectfully submitted,

VIRGINIA GRADY
Federal Public Defender


s/ Natalie Stricklin
NATALIE G. STRICKLIN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Natalie_Stricklin@fd.org
Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2019, I electronically filed the foregoing ***Sentencing Statement in Support of a Sentence of Probation*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail address and all counsel of record:

Daniel E. Burrows, Assistant United States Attorney
Email:  daniel.burrows@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Carmen Sanchez     (*via U.S. mail*)

s/ Natalie Stricklin
NATALIE G. STRICKLIN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Natalie.Stricklin@fd.org
Attorney for Defendant

Case 1:18-cr-00389-RBJ   Document 143   Filed 04/16/19   USDC Colorado   Page 10 of 10